Good morning, Your Honors. May I please support Susan Horner from Miller-Monson, Professor Polachek and Hoshaw for the appellant, Valerie Withrow. I'd like to reserve two minutes for rebuttal. First, I would like to provide the court with a citation update from one of the sites in our brief. In the appellant's opening brief at page 53, there's a citation to Young v. Verizon Bell District Court for District of Illinois. At that time, I only had a unofficial citation. It has an official citation, 667 FEDSUP 2nd 850, and unknown to me at that time, it was taken up on appeal by the defendant, and the Ninth Circuit on August 10 just affirmed that decision. And that decision is a published decision. I believe it is at 210 U.S. Athlexis 16483, and I would approve the court to pages 13 and 14 of that site. And if you need a Westlaw site, I have that as well. In that case, the Verizon had argued that this particular claim had accrued in February 1998, a long time ago, when Young had received her lump sum benefit computed under the Verizon plan. And the court said, similar to the Ninth Circuit, and maybe not expressly, but implicitly rejecting the Third Circuit Miller approach, which has been urged in this case by the defense appellee, beginning with Young's ERISA claim, we have held that a claim to recover benefits under 502A accrues upon a clear and unequivocal repudiation of rights under the pension plan, which has been made known to the beneficiary. In this case, Young did not receive a clear repudiation of her claim for additional benefits until 2005, when the Verizon Review Committee resolved her administrative appeal. So I would direct the court to that. And then for my remaining remarks, I'd like to address the actual interpretation of the Third Circuit Miller approach, which is reflected in a district court decision, and it reveals how markedly different it is from the Ninth Circuit. The case is Ratkovich, R-A-T-K-O-V-I-C-H versus Hartford, and it is definitely an unpublished decision. It's available on Lexis, 210 U.S. District Lexis, 84059. It is not a holding of the law, but it discusses what Miller requires. And it states the clear repudiation rule does not require a formal denial or even a formal application. Rather, the rule only requires a, quote, clear repudiation, or, quote, clear, end quote, repudiation of the benefits, which was clear and made known to the beneficiary. It then goes on to say in Miller, the Third Circuit found that an insurance company's underpayment of benefits constituted the, quote, clear repudiation, end quote, because it acted both as a denial of further benefits and because the repudiation was, quote, made known, end quote, to the beneficiary upon his receipt of the payment. And that simply is not the approach that the Ninth Circuit takes in Chuck and Wetzel and some of the other cases. The, in addition, I would also like to address the reliance standards concealment of the underlying basis of the calculation. As you have seen from all of the letters that Ms. Withrow wrote, there not being any writing from reliance standard, she had wondered what in the world was the basis for the number they came up with. And she tried, well, maybe it's the Social Security earnings. Well, what about this March to December earnings? You're not, are you taking that or not? And every single one of her letters addresses that issue. But she couldn't get to the bottom of where the calculation error came from, because they never said, we're using 11 months of 1981 to 82, and then we're going to use 13 months over here. So she had no clear knowledge. She said, this doesn't seem right. And it's, there's no question that she took some time, a long time, 11 years. But at the same time, when she did address it, the insurance company didn't object. They willingly gave her, for the first time, an administrative process and willingly gave her a denial letter, allowed her to appeal. They raised no timeliness issue until the litigation. And for the first time, they didn't have a defense bar, affirmative defense, and like a coverage defense or anything else. They should have said during the administrative appeal, well, you know, this was really resolved in 1990. It was resolved with finality. We don't need to address it anymore. And that's what the case in Martin did. That's what the facts in Chuck did. And it didn't happen here. Certainly, this insurance company is a fiduciary under ERISA. So there are fiduciary obligations of disclosure, of informing the claimant what additional information they need to address this. That's the whole purpose of the administrative regulations, is to give them and equip them with sufficient information to know what to address, when to address it, and when it's going to be final. And that didn't happen. Certainly, the principle that passive concealment may be insufficient for the court to grant an equitable tolling based on a doctrine of like a fraudulent concealment. But the caveat to that is that doesn't apply where the defense had a fiduciary duty to disclose the information to the plaintiff. And here, Reliance did have a fiduciary duty. And instead of disclosing it, they hid that fact, and they kept directing her over to this area of, well, it's the March through December that we're going to take you back and find you disabled as of March 86 instead of December. In your view, when does the tolling period start to run? I'm sorry? In your view, when does the tolling period for timeliness begin to run? Well, there's an issue of when it actually accrued versus when it accrued and when it was tolled. That's my question. Okay. The accrual, in my opinion, based on Chuck, didn't even occur until after the final denial through the administrative process. And that date is? Well, there was a verbal denial on the telephone on June 14, 2004. However, there was also a promise at that time. There was no rationale given. It was just, we're going to deny the claim, and so, but we will send you a written decision. And that was promised on several occasions through letters. Okay. So your argument is it's not until the written decision arrives that her date would occur? A written decision that makes it clear that this is now a final decision. Because certainly, if you're receiving, it's not unlikely that an insured who's very sick may not address with the same haste a case that we have. But in this case, she had been on claim. She is still on claim. She is totally disabled. She's still receiving benefits. She was never told that there was any time deadline to address a calculation issue. She was never told that 1990 was, I mean, there was no communication in 1990 about what the true calculation was. So in terms of applying an equitable estoppel or an equitable tolling, it would have begun back in 1990 when Reliance knew the basis of their calculation, but they were withholding it and concealing it from her, leading her to believe that it had something to do with this 86 work period, the March to December. So when they finally did give her an administrative review period, they didn't object. They stated their reasons for denial. It was a little cryptic and opaque, but they did reference the 81 to 82 period. And then they at no time gave her the impression that it would be too late to address and get it corrected. They gave her every impression that if it could be corrected, it would. And this Court is aware because of the recent Mitchell v. CBLS case that where there is a failure in an ERISA case to raise a, in that case it was a coverage defense, in this case it's a limitation defense, that can be considered a waiver of that. And if you look at the entire circumstances and history of this case, it appears that nobody really thought this was decided with finality, and they were willing to go ahead and do it. Only when we came into litigation was that defense raised. Thank you, Your Honor. Kennedy, do you believe the contractual limitation in the policy relates to a claim for underpayment of benefits as opposed to a claim for disability? No, I do not think it relates at all to a claim for underpayment. That proof language comes out of the requisite state insurance code that has certain compulsory provisions. And that one, it's almost everyone has to have in the contract a proof of loss provision. And then they're allowed to state that you can bring a suit within three years of proof of loss, or if you have a continuing claim, then 90 days following termination of the period for which you're liable, or something similar to that. Certainly no less favorable to that. And that's where some of the mock issues came in. There was a provision, but nobody could tell what the proof, when the quote proof is due of disability, which is the proof of loss. And in this case, you've got a calculation issue, and they didn't have a number of statutes or rather contract limitation suit periods for addressing different errors. I can guarantee you if the insurance company had made an error in calculating something and they thought they had overpaid the claimant, even if they determined that five years down the road, ten years down the road, they would come back and say, oops, we boobooed, we did an audit of your claim, we've overpaid you, we are now going to recoup all of the amounts, either make a restitution claim, or they would say we're just not going to pay you anymore until we recover the amounts of the overpayment. So it's sort of a sauce for the goose, sauce for the gander. If they do that, why is it that a claimant who claims to have been underpaid month by month, and now finally through the administrative process understands where they came with their numbers, finishes the administrative appeal, gets a final denial, goes to court with that basis, to litigate that basis, and a contract suit limitations period is raised when the claimant didn't have a copy of the policy at hand, but we did get it in 2003, and a statute of limitations period is raised. But never were either of those raised as a timeliness bar, or we've already finalized our evaluation of this back in 1990 or at any time before. Thank you. Thank you, counsel. Did that answer your question, I'm sorry? You did. Okay, thank you. Victoria Fuller for the appellee of the BASH Fall Z Salary Protection Plan. All right. Thank you. I'd like to make these essential points here today. First, that the appellant has not considered the clearly erroneous standard of review that's applicable to her factual arguments. Second, that this case falls squarely within the Chuck v. Hewlett-Packard opinion, which is Ninth Circuit law, so this court can affirm without going into whether the Third Circuit got it right or wrong in the Miller opinion. And finally, that the appellant has not provided a basis that would support the application of a tolling, estoppel, or a waiver. First of all, with regard to the factual arguments. Do you mind if I start with your three and maybe work back to the others? Of course. I'm trying to figure out what this contractual limitation period language means. So I'm just reading from the policy that says proof of loss. Written proof of loss must be furnished to the company and issued in case of a claim for loss for which this policy provides any 90 days after the termination of the period for which the company is liable. What's that mean? It's... I mean, that's the key to this case, it seems to me, as to whether or not you get to apply your three-year period. Because if you don't get to apply the three-year period, we default into a risk that has a four-year period. Right. And that doesn't make a difference here, because in either case, Ms. Withrow didn't file her lawsuit until 16 years after she first acquired it. Well, it might make a difference to me, depending on what I think it accrued. Okay. Well, in the respondent's brief, I cited a case. Let me look back at it here. The accrual rules within the contract itself do not apply to the claim that is at hand here. Rather, the claim here accrued when the plaintiff had reason to know that her claim had been finally denied. And the case that I supported in my brief for that proposition let me look back at it. Well, that's the ERISA statute of limitations standard, isn't it? That's correct. That's correct. I think Judge Fletcher is referring to the contractual way of asking. I'm trying to figure out what the contract means, not what ERISA means. Okay. And so I'm trying to figure out when does the three years start running. And it says within 90 days after the termination of the period for which the company is liable. I mean, I find this language somewhat opaque. I understand that you didn't write it, that the state requires something like this to be written. But I have to say, it seems to me the most reasonable interpretation of this language is within 90 days after, meaning the time of disability has already been shown. I would agree with that, Your Honor. And otherwise, then it would be a rolling accrual rule of the type that was provided in Nikaido, which has been since overruled. So what's at issue here, then, is not the three-year contractual period. Correct. It's the four-year period. It's the four-year period. So we're just disputing then when's the accrual. Exactly, Your Honor. And why didn't the accrual come when there's a final denial by your people that they made a miscalculation? Because the issue is when there were notice violations. And clearly there was no letter here from Alliance that contained the ERISA notifications. But the issue then under the Chuck v. Hewlett-Packard case is when did the plaintiff have reason to know that her claim had been finally denied. And the district court found that she had reason to know that in 1990. And the record provides facts of more than sufficient basis to support that finding. And review for me, what was the basis for in 1990? She knew that it had been finally denied? The basis for that finding, Your Honor, if the court would first look at 2 ER 184, that's a letter from Ms. Withrow, where she admits that when she first applied for benefits in 1987, she sat down with a Reliance representative, and she had what she called a lengthy discussion with that person when she first raised her claim that the benefit amount was too low. And that person explained to her the numbers and why the benefit amount was what it was, and went over her income records with her. Was there any formal response from the insurance company besides the conversation? Well, if the court is asking was there no letter, no, there was not a letter. So there's nothing writing from the insurance company? No, there was not, that I can see in the record. Insurance companies are fairly unwilling to allow a form of estoppel based upon oral representation that might harm the company. But now you're seeming to rely on an oral representation that might help the company. On several oral representations coupled with Ms. Withrow's account that she did, or acknowledgment that she did receive responses to her inquiries. And the reason that a formal letter is not required is this. Imagine if, in this case, Ms. Withrow had not sat down with Reliance on one occasion, but she had sat down with Reliance on ten different occasions. And on ten different occasions, Reliance had told her clearly, no, the calculation is going to remain the same and you're going to continue to receive the same checks. And, in fact, year after year she continued to receive and cash the same checks and still did not file a lawsuit until 16 years later. In that case, if a letter were required, she would still be able to file a very old lawsuit, despite having reason to know that her claim had been denied. There just seems something wrong about finding in a cruel period to have started much earlier when, in fact, we do have a later letter in the file. And when it seems to me that, and I realize this is a characterization that's not very favorable to your client, they keep blowing her off orally. They are not very responsive. They just say, yeah, yeah, here it is, here it is, and they don't really give her the nitty-gritty as to why they've done what they've done. And is the Court referring in that situation to 1990 or 1987 or the later inquiries? You bet. Every one of them. Well, I would actually take issue with that, Your Honor. I would say that in 1987 they sat down with Ms. Withrow and they disclosed why the calculation was what it was and why the benefit was what it was. So why bother with the formal denial letter in 2003? Well, the reason that that doesn't reopen the statutory period is that when Ms. No, I mean, if the company felt that it had finally denied the claim in the 90s, why did it send a final letter in 2003? Well, there are many references throughout those letters, Your Honor, that indicate that at the time they had great difficulty even finding all of the record. In the beginning they didn't even have a record. The insurance company had difficulty? Yes, Your Honor. In the beginning there were some e-mails from Mr. Loya of the insurance company saying, we don't even have a record that she had come to us earlier on. So we want insurance companies to reengage insurers when they do come back with inquiries, and for that reason we don't want to have a rule that says that any time an insurance company reengages an insurer that's going to reopen the statutory period. And here, by 2002, when she did reengage the insurance company, the statutory period had already lapsed. And those policy considerations are discussed in the Martin opinion from this Court. Finally, does the Court have another question? It's this one, I think. I'm quite sympathetic to the needs of an insurance company with disability claims when they claim it's stale and the disability is asserted to have begun way back when, and here we are 10 years later. The doctors may not be able to testify properly. Who knows? The doctors may even be dead. It's very difficult retroactively to assess disability 10 years earlier and so on. But that's not the case here. There's nothing that's been lost. In terms of the calculation and what it's supposed to be, I don't think you're arguing that we don't have access to the records that would allow us to do a proper calculation, and at some later time you finally give her a letter. I don't understand why the letter is not the formal period from which then the period starts to run. Because, as the district court found, she had reason to know in 1990 already that the claim had already been denied. Now, this is what you mean by denial. She had reason to know that you were blowing her off. But formal denial is a different proposition from this insurance company is not cooperating with me and is not very sympathetic. Well, and that's an issue of whether or not formal denial is actually required and what that means. Yeah, that's right. Chuck versus Hewlett-Packard clearly says that even in the instance where a letter containing all the ERISA notifications was not done, you still have to look at the facts of every case and try to determine whether or not the plaintiff had reason to know that her claim had been denied. And here what we do have, what we don't have is a letter from the insurance company. What we do have are letter after letter after letter from Ms. Withrow indicating that she knew that her claim had been denied from as far back as 1987. She knew that you weren't paying her what she thought she should get. That's not the same thing as your formally denying her claim. And, again, there's the formal denial. We do have a response. We do have Reliance sitting down with her in 1987. We do have Reliance calling her back in 1990. And then we have the check after check after check where they pay the amount that they believe was correct. And they never wavered in their position. They never lulled her into an action and invited more information. I don't know. Your role seems, your proposed role seems to create an incentive for insurance companies to underpay because then they can just lead the insurer on over all this period, keep underpay, keep that money, keep making money. I used to represent insurance companies, so I know a little bit about how they do this. So they can make money off that money that they're underpaying. And, hey, if judgment day never comes, judgment day never comes. But if it comes, they've still had the value of all the money that they've kept. Well, that raises two issues, and that's, one, whether or not they actually responded to her, which I submit that they did. And I think that Ms. Withers' account of the conversation in 1987 shows that they did explain the calculation to her. And I think the district court found that. In my view, it's a mischaracterization of the record to say that they actually concealed anything from her. I'm not saying that, but they did, I mean, they were paying her, they were underpaying her in her view, but they didn't issue this letter saying they weren't going to pay her anymore until a long time afterwards. And it's in their interest to do that. Certainly it's in their interest to do that. Here they didn't do it early on. But, as I said before, the formal letter under Chuck can't be the reason, can't be the only way to find that the claim has actually been denied. Otherwise, you can have situations where plaintiffs clearly knew that their claim has been finally denied, whether there was a letter or not. All right. Does anyone have any other questions? Do the federal risks and regulations require insurance companies to advise a person seeking to resolve a problem with their carrier that there's a statute of limitations that's involved as far as filing in a district court, as opposed to an administrative appeal? I believe that long after the facts of this case were in effect, a statute has been enacted that now insurance companies do have to provide notice to the statute of limitations. But I believe that was in the late 90s, and that was not or maybe even after that. I want to take that back because it might have been in the 2000s. But that was not required at the time that Reliance was interacting with Ms. Withrow in this case. Well, Reliance was interacting with the plaintiff and her attorney up through Up through 2003, Your Honor. 2004. And so Through the appeal, the administrative appeal, and it was denied. That's why I'm sorry. Well, I think that's where the interaction was over that whole period of time. I would agree. And that's why I retracted from the date, because it may be that that statute came into effect in 2007. I believe it's discussed in the Chuck opinion. I believe the Chuck court says we don't decide this issue in cases that take place after that statute was in effect. And when I read that, at least from my memory, I believe that that statute came into effect after all the interactions had taken place in this case. And if I might, can I make one brief comment on Miller, please? All right. I'd just like to point out that the appellant overstates the importance of the Miller case here. That case was quite different because the plaintiff there didn't make any inquiry whatsoever as to whether he was getting the correct amount until 15, 16 years later. Here, what happened was much closer to the Chuck case. There was an interaction immediately from the GECCO where Ms. Withrow raised her claims, and then Reliance denying her claims throughout and continuing to pay the checks. So this court can affirm the district court without deciding whether or not the Miller court got it right in the — or, excuse me, the Third Circuit got it right in the Miller case. All right. Well, thank you very much, counsel. Withrow v. Reliance will be submitted, and we'll take up Marsh v. Sanchez.
judges: Timlin, Wardlaw, Fletcher W.